1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11  ADAM RAY LOPEZ,                    )   Civil No. 09cv00108 W(RBB)
                                       )
12              Plaintiff,             )   **REPORT AND RECOMMENDATION**
                                       )   **GRANTING IN PART AND DENYING**
13                                     )   **IN PART DEFENDANTS P. SANTOYO**
    v.                                 )   **AND C. ROBERTSON'S MOTION FOR**
14                                     )   **SUMMARY JUDGMENT AND/OR**
                                       )   **SUMMARY ADJUDICATION ON SECOND**
15  P. SANTOYO, D.D.S, C.              )   **AMENDED COMPLAINT [ECF NO.**
    ROBERTSON, C.D.O.,                 )   **131] AND ORDER DENYING**
16                                     )   **PLAINTIFF'S [EX PARTE]**
                Defendants.            )   **APPLICATION FOR ORDER ALLOWING**
17  _____ )   **PLAINTIFF TO FILE REPLY [ECF**
                                           **NO. 170]**
18

19

20       Plaintiff Adam Ray Lopez, a state prisoner proceeding pro se

21  and in forma pauperis, filed a Complaint on January 16, 2009,

22  pursuant to 42 U.S.C. § 1983 [ECF Nos. 1, 4].  He subsequently

23  filed a First Amended Complaint on July 15, 2009 [ECF No. 7], and a

24  Second Amended Complaint on December 13, 2010 [ECF No. 62].[1]  Lopez

25  contends that Defendants Santoyo and Robertson violated his Eighth

26  Amendment right to be free from cruel and unusual punishment by

27  _____

28       [1]  Because the Second Amended Complaint is not consecutively
    paginated, the Court will cite to it using the page numbers
    assigned by the electronic case filing system.

                                   1
                                                        09cv00108 W (RBB)

acting with deliberate indifference to Plaintiff's serious medical needs.  (Second Am. Compl. 5, ECF No. 62.)  The Defendants filed an Answer [ECF No. 98] and a Motion for Summary Judgment and/or Summary Adjudication on Second Amended Complaint [ECF No. 131].  On August 7, 2012, Plaintiff was given notice, pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1988), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988), of his opportunity to submit evidence in opposition to Defendants' Motion for Summary Judgment [ECF No. 134].  Plaintiff's Response to Defendants' Motion for Summary Judgment [ECF No. 163] was filed on November 19, 2012.  Defendants filed their Reply to Plaintiff's Opposition to Motion for Summary Judgment [ECF No. 166] on December 6, 2012.  On December 17, 2012, the Court received a document entitled Notice of Plaintiff's Application for Order Allowing Plaintiff to File [a] Reply to Defendants' Most Recent Reply to Plaintiff's Opposition to Motion for Summary Judgment on Second Amended Complaint [ECF No. 170].  On December 27, 2012, Defendants filed their Response to Plaintiff's Ex Parte Application for Order Allowing Plaintiff to File Reply to Defendants' Most Recent Reply [ECF No. 173].

For the reasons stated below, the Court recommends that Defendants' Motion be granted in part and denied in part.  The Court denies Plaintiff's request to file a surreply [ECF No. 170].

## I.  STATEMENT OF UNCONTROVERTED FACTS

Plaintiff's claims arise out of events that occurred between July 26, 2006, and July 10, 2007, while Lopez was housed at Calipatria State Prison ("Calipatria").  (Defs.' Mot. Summ. J. Attach. #2, Decl. Timothy J. Kral, Ex. N, Dep. Adam Ray Lopez, at 11, 18, ECF No. 131.)  On July 26, 2006, Plaintiff submitted a

Health Care Services Request Form CDC 7362 complaining of extreme pain and discomfort and requesting that his wisdom teeth be extracted. (Id. at 21-22; Second Am. Compl. Ex. A at 14, ECF No. 62.) The form was classified[2] as priority 1C, which required Lopez to be seen within sixty days. (Second Am. Compl. Ex. A at 14, ECF No. 62.) Despite the priority classification, Plaintiff was not seen by a dentist until Defendant Santoyo, D.D.S., examined Lopez on November 1, 2006, ninety-one days later. (Defs.' Mot. Summ. J. Attach. #2, Decl. Timothy J. Kral, Ex. N, Dep. Adam Ray Lopez, at 22; Second Am. Compl. Ex. B at 16, Ex. C at 18, ECF No. 62.)

Santoyo's notes from November 1, 2006, indicate that Plaintiff's impacted wisdom teeth were causing pain. (Second Am. Compl. Ex. B at 16, ECF No. 62.) Santoyo filled out a physician's request for services stating that Lopez experienced swelling, pain, and infection in his mouth and was in urgent need of oral surgery. (Id. Ex. C at 18.) Santoyo prescribed Peridex mouth wash and referred Lopez to an outside oral surgeon, Dr. Torchia, D.D.S.[3] (Id. Ex. B at 16.) The notes state Santoyo advised Lopez that the wait list for outside surgery could be as long as three months.[4] (Id.) Defendant Santoyo initially classified Lopez's priority after the visit as "1," but subsequently changed it to "2." (Id.;

---

[2] The parties hotly dispute as to who executed the classification on Lopez's form 7362. The Court addresses this dispute below.

[3] Claims against Dr. Torchia were dismissed with prejudice on September 17, 2010. (Order Adopting Report & Recommendation 12, ECF No. 55.)

[4] Plaintiff disputes this fact and maintains that Santoyo never informed him about the long wait period.

1  see Defs.' Mot. Summ. J. Attach. #3, Decl. Paul Santoyo 3, ECF No.
2  131.)

3       On January 1, 2007, approximately six months after his initial
4  request, Lopez submitted an inmate grievance complaining about the
5  wait time and his ongoing pain, and requested to be sent to an
6  outside hospital for wisdom tooth extraction.  (Second Am. Compl.
7  Ex. E at 26, ECF No. 62.)  His grievance was partially granted at
8  the informal level on February 20, 2007, and Plaintiff was informed
9  that he was "on the oral surgery list to be seen by an outside
10 provider."  (Id.)  On February 22, 2007, Lopez appealed that
11 response to the formal level, stating that the wait time was
12 unacceptable due to pain, and that his surgery "should be done
13 forthwith."  (Id.)

14      On April 20, 2007, Plaintiff submitted another health care
15 request reiterating the pain, discomfort, and swelling caused by
16 his wisdom teeth.  (Id. Ex. F at 30.)  Santoyo responded to the
17 appeal on April 23, 2007.  (Id. Ex. E at 27-28.)  Plaintiff was
18 advised that he was scheduled to see the oral surgeon on April 30,
19 2007.  (Id. at 28.)  Lopez was transported to Dr. Torchia in San
20 Diego, California, and received his surgery on April 30, 2007.
21 (Id. Ex. G at 32; Defs.' Mot. Summ. J. Attach. #2, Decl. Timothy J.
22 Kral, Ex. N, Dep. Adam Ray Lopez, at 86, 96, ECF No. 131.)  Dr.
23 Torchia chipped one of Plaintiff's teeth while performing the
24 procedure and issued a physician's order directing Calipatria
25 dentists to repair the tooth.  (Second Am. Compl. Ex. Ex. G at 32,
26 ECF No. 62.)  Torchia gave Lopez a prescription for a five-day
27 supply of Ibuprofen for the pain.  (Id.)  Plaintiff continued to
28 receive Peridex after the surgery.  (Defs.' Mot. Summ. J. Attach.

4

1  #2, Decl. Timothy J. Kral, Ex. N, Dep. Adam Ray Lopez, at 102, ECF

2  No. 131.)

3       On May 2, 2007, the Plaintiff submitted another health care

4  request complaining of extreme pain and swelling to his jaw and

5  inability to eat.  (Second Am. Compl. Ex. H at 34, ECF No. 62.)

6  The triage nurse's notes indicate that Lopez had pain following the

7  surgery, and that the prescribed Motrin had no effect on the pain.

8  (Id.)  Lopez was placed on liquid diet.  (Id.)  On or about May 3,

9  2007, Lopez was seen by Dr. Robertson, who noted swelling and pain,

10 and prescribed Boost nutritional beverage.[5]  (Pl.'s Opp'n Defs.'

11 Mot. Summ. J. Ex. F at 63, ECF No. 163.)  The progress notes from

12 that day indicate that pain medication was prescribed, but not

13 issued.  (Id.)

14      Lopez was subsequently seen by Defendant Santoyo on May 15,

15 2007, and on June 12, 2007.  (Id. at 63-64.)  On May 31, 2007,

16 Lopez submitted another health care request indicating that he

17 needed his chipped tooth filled and his teeth cleaned.  (Second Am.

18 Compl. Ex. I at 36, ECF No. 62.)  Santoyo ultimately repaired

19 Lopez's chipped tooth on July 10, 2007.  (Pl.'s Opp'n Defs.' Mot.

20 Summ. J. Ex. F at 64, ECF No. 163.)

21      **II.  LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS**

22      Federal Rule of Civil Procedure 56(c) provides, "The court

23 shall grant summary judgment if the movant shows that there is no

24 genuine dispute as to any material fact and the movant is entitled

25 to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Like the

---

27      [5] Defendant Robertson's declaration states that he first
   treated Lopez on May 1, 2007, and prescribed pain medication and
28 Boost nutritional beverage.  (Defs.' Mot. Summ. J. and/or Summ.
   Adjudication Second Am. Compl. Attach. #4, Robertson Dec. 2, ECF
   No. 131.)

standard for a directed verdict, judgment must be entered for the moving party "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citing Brady v. S. Ry. Co., 320 U.S. 476, 479-80 (1943)). "If reasonable minds could differ," judgment should not be entered in favor of the moving party. Id. at 250-51; see also Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007).

The parties bear the same substantive burden of proof that would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Liberty Lobby, Inc., 477 U.S. at 252; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex Corp., 477 U.S. at 322). The absence of a genuine issue of material fact on a single element of a claim is sufficient to warrant summary judgment on that claim. Celotex Corp., 477 U.S. at 322-23.

The moving party bears the initial burden of identifying the pleadings and evidence it "believes demonstrate the absence of a genuine issue of material fact." Id. at 323; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. Stanford, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a

genuine issue for trial. Celotex Corp., 477 U.S. at 324. To successfully rebut a defendant's properly supported motion for summary judgment, the plaintiff "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[']s[] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323; Liberty Lobby, 477 U.S. at 249). Material issues are those that "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248; see also Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1039-40 (9th Cir. 2000); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding whether any genuine issue of material fact remains for trial, courts must "view[] the evidence in the light most favorable to the nonmoving party . . . ." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001); see also Eastman Kodak Co. v. Image Technical Serv., Inc., 504 U.S. 451, 456 (1992) (stating that the nonmoving party's evidence is to be believed and all reasonable inferences drawn in the nonmoving party's favor). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). While the district court is not required to search the entire record for an issue of fact, the

court may nevertheless exercise its discretion to consider materials in the record that are not specifically referred to. <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>Forsberg v. Pacific N.W. Bell Tel. Co.</u>, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

When the nonmoving party is proceeding pro se, the court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations omitted).

**III. DISCUSSION**

**A.   Deliberate Indifference to Lopez's Medical Needs**

The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain . . . .'" <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)) (additional citations omitted).  The government has an "obligation to provide medical care for those whom it is punishing by incarceration."  <u>Id.</u> at 103; <u>see also</u> <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 198 (1989) (citing <u>Estelle</u>, 429 U.S. at 103-04).

To assert an Eighth Amendment claim for inadequate medical care, a prisoner must allege facts sufficient to fulfill two requirements:  one objective and the other subjective. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (quoting <u>Allen v.</u>

1   Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)); see Farmer v. Brennan,

2   511 U.S. 825, 834 (1994).

3       Under the objective requirement, in a medical care claim, the

4   prisoner must show that he had a serious medical need.  See

5   McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992),

6   overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d

7   1133, 1136 (9th Cir. 1997) (en banc).  "A 'serious' medical need

8   exists if the failure to treat a prisoner's condition could result

9   in further significant injury or the 'unnecessary and wanton

10  infliction of pain'."  Id. at 1059 (quoting Estelle, 429 U.S. at

11  104).  "Examples of serious medical needs include 'the existence of

12  an injury that a reasonable doctor or patient would find important

13  and worthy of comment or treatment; the presence of a medical

14  condition that significantly affects an individual's daily

15  activities; or the existence of chronic and substantial pain.'"

16  Lopez, 203 F.3d at 1131 (quoting McGuckin, 974 F.2d at 1059-60).

17  Defendants assume for the purposes of the summary judgment that

18  Plaintiff can demonstrate a serious medical need.  (Defs.' Mot.

19  Summ. J. and/or Summ. Adjudication Second Am. Compl. Attach. #1,

20  Mem. P. & A. 13, ECF No. 131.)

21      Under the subjective requirement, the prisoner must allege

22  facts that show that the defendant acted with "'deliberate

23  indifference' to inmate health or safety . . . ."  Farmer, 511 U.S.

24  at 834; see also Wilson, 501 U.S. at 302-03 (1991) (indicating that

25  there is no significant distinction between wantonness and

26  deliberate indifference); Lopez, 203 F.3d at 1133 (quoting Allen v.

27  Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)).  "[T]he official must

28  be both aware of facts from which the inference could be drawn that

9

a substantial risk of serious harm exists, and he must also draw
the inference." Farmer, 511 U.S. at 837.  "This is true whether
the indifference is manifested by prison doctors in their response
to the prisoner's needs or by prison guards in intentionally
denying or delaying access to medical care or intentionally
interfering with the treatment once prescribed." Estelle, 429 U.S.
at 104-05 (footnotes omitted).  The indifference to medical needs
must be substantial; inadequate treatment due to malpractice, or
even gross negligence, does not amount to a constitutional
violation. Wilson, 501 U.S. at 297 (quoting Estelle, 429 U.S. at
105-06); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

Deliberate indifference does not require an express intent to
cause harm. Farmer, 511 U.S. at 835-36.  It does, however, require
more than mere negligence. Id. at 835; Daniels v. Williams, 474
U.S. 327, 328 (1986); Estelle, 429 U.S. at 106.  A defendant's acts
or omissions will not rise to the level of a constitutional
violation unless there is a reckless disregard for a risk of
serious harm to the prisoner. Farmer, 511 U.S. at 836.  The
official must have "know[n] that [the] inmate[] face[d] a
substantial risk of serious harm and disregard[ed] that risk by
failing to take reasonable measures to abate it." Id. at 847.

Plaintiff fails to show deliberate indifference as a matter of
law where defendant has based his actions on a difference in
medical opinion and "either of two alternative courses of treatment
would be medically acceptable under the circumstances . . . ."
Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing
Estelle, 429 U.S. at 107-08).  Likewise, a difference of opinion
between an inmate and medical personnel regarding medical diagnosis

09cv00108 W (RBB)

1  and treatment does not establish a claim of deliberate

2  indifference.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.

3  1989); Franklin v. Or., State Welfare Div., 662 F.2d 1337, 1344

4  (9th Cir. 1981).  Where there is a "'mere delay in surgery,' a

5  prisoner can make 'no claim for deliberate medical indifference

6  unless the denial was harmful.'"  McGuckin, 974 F.2d at 1060

7  (quoting Shapley v. Nevada Bd. of State Prison Comm'rs., 766 F.2d

8  404, 407 (9th Cir. 1985); Esposito v. Khatri, No. 08cv742-H (WMc),

9  2009 WL 702218, at *10 (S.D. Cal. Mar. 16, 2009) (citations

10  omitted); Chrisman v. Smith, No. 08cv975-IEG-LSP, 2008 WL 4891235,

11  at *3 (S.D. Cal. Nov. 12, 2008) (citation omitted); Velasquez v.

12  Barrios, No. 07cv1130-LAB (CAB), 2008 WL 4078766, at *9 (S.D. Cal.

13  Aug. 29, 2008).  The prisoner does not need to show that the harm

14  was substantial, although doing so would support his claim of

15  deliberate indifference.  Jett v. Penner, 439 F.3d 1091, 1096 (9th

16  Cir. 2006)(citation omitted).

17      **B.  Defendant Santoyo**

18      Defendant Santoyo moves for summary judgment, arguing that

19  there is no evidence he was deliberately indifferent to Lopez's

20  serious medical needs.  (Defs.' Mot. Summ. J. Attach. #1, Mem. P. &

21  A. 13, ECF No. 131.)  For purposes of their Motion, both Defendants

22  assume that Plaintiff can demonstrate a serious medical need.

23  (Id.)

24      **1.   Denial of Pain Medication**

25      Plaintiff claims that Defendant Santoyo was deliberately

26  indifferent to his serious medical needs by failing to prescribe

27  pain relief medication.  (Second Am. Compl. 6-7, ECF No. 62.)

28  Lopez testified that at the time Santoyo examined him on November

1, 2006, Lopez was experiencing extreme pain and discomfort due to
the swelling in his mouth.  (Defs.' Mot. Summ. J. Attach. #2, Decl.
Timothy J. Kral, Ex. N, Dep. Adam Ray Lopez, at 38, ECF No. 131.)
Plaintiff stated that Santoyo declined to prescribe any pain
medication:

> A.  I told him I need – I was in pain.  I need some
> pain medication.
> Q.  You're referring to November 1st, 2006?
> A.  Yes.
> Q.  And did he actually say "I'm refusing to give you
> medication?"
> A.  Not in those exact words.
> Q.  This is when he said you can hold out?
> A.  Exactly.

(Id. at 71.)

The parties agree that after examining Lopez on November 1,
2006, Defendant Santoyo gave him a prescription of Peridex, a
mouthwash.  Whether this constituted adequate pain relief under the
circumstances is disputed.

Defendant argues that the oral rinse solution Peridex
prescribed by Santoyo to Lopez was sufficient to relieve
Plaintiff's pain pending his surgery.  (Id. Attach. #3, Decl. Paul
Santoyo 2.)  Defendant Santoyo claims that there is no evidence
that he refused to prescribe pain medication to Lopez during the
pendency of Plaintiff's surgery, because the prescription of
Peridex, an antimicrobial oral rinse, was sufficient to treat
Plaintiff's problem.  (Id. Attach. #1, Mem. P. & A. 13-14.)
Defendant argues that Peridex reduces the amount of bacteria in the
patient's mouth, thereby reducing or preventing the infection, the
underlying cause of Plaintiff's swelling and pain.  (Id. at 14.)

In his Opposition to Defendants' Motion for Summary Judgment,
Lopez submits evidence that Peridex is not a pain relief

09cv00108 W (RBB)

medication.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 5-6, ECF No. 163;
id. Exs. D, E.)  Lopez argues that Peridex is used to treat
gingivitis as characterized by redness and swelling of the
gingivae.  (Id. Ex. D.)  Plaintiff points out that he was not
diagnosed with, or suffering from, gingivitis.  (Pl.'s Opp'n Defs.'
Mot. Summ. J. 6, ECF No. 163.)

Defendant replies that Lopez admitted that he received Peridex
every day between November 1, 2006, and April 30, 2007, and that
the mouthwash helped alleviate his pain.  (Defs.' Reply Pl.'s Opp'n
Mot. Summ. J. 5, ECF No. 166.)  In his deposition, Lopez stated
that he used the Peridex mouthwash daily in lieu of using a
toothbrush because he could not brush his teeth due to pain and
swelling:  "It was difficult for me to brush my teeth, so that —
that worked."  (Defs.' Mot. Summ. J. Attach. #2, Decl. Timothy J.
Kral, Ex. N, Dep. Adam Ray Lopez, at 63, ECF No. 131.)  Plaintiff
also testified, however, that despite the oral rinse, he continued
to experience pain.  (Id. at 62-64, 69.)

Santoyo has not presented evidence that Peridex is a pain
relief medication.  Instead, he argues that its effect on swelling
and inflammation can reduce the underlying pain.  Plaintiff's
condition, however, involved not only swelling and infection, but
also impacted wisdom teeth.  Defendant concedes that Plaintiff's
wisdom teeth were "impacted, that is misaligned and entrapped in
the jaw bone or prevented from erupting due to the adjacent teeth
or dense overlying soft tissue."  (Id. Attach. #1, Mem. P. & A.
16.)  Although Peridex may alleviate pain caused by infection,
Defendant has not offered any evidence as to whether the oral rinse
can alleviate pain associated with the pressure of impacted teeth

on the jaw bone, soft tissue, or adjacent teeth.  A disputed issue
of fact remains, therefore, as to whether Peridex could help
Plaintiff with pain caused by the impacted wisdom teeth.

Defendant Santoyo argues that Lopez did not complain about his
dental pain to non-dental health staff, even though he was treated
for chronic knee pain in December 2006 and March 2007.  (Id. at
14.)  This argument challenges Lopez's serious medical need, which
Defendant assumed for the purposes of his Motion.  (See id. at 13.)
In response, Lopez rejects Defendant's suggestion that he was
required to seek medication for his dental pain from non-dental
medical staff.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 17, ECF No. 163.)
Lopez nonetheless points out that he did request and receive pain
medicine from an orthopedist on one occasion.  (Id. Ex. I.)

The parties also disagree on whether Defendant Santoyo was
aware of Plaintiff's dental condition between the time Lopez
submitted his health care request on July 26, 2006, and when
Santoyo saw him during an office visit on November 1, 2006.
Defendant Santoyo's declaration states that prior to Santoyo's
examination of Plaintiff on November 1, 2006, he had no knowledge
of Lopez's condition.  (Defs.' Mot. Summ. J. Attach. #3, Decl. Paul
Santoyo 2, ECF No. 131.)  Plaintiff contends that Defendant Santoyo
had to know about Lopez's condition because the priority
designation on the health care request was made by Santoyo, as
required by the Division of Correctional Health Care Services
Dental Services Manual.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 11, ECF
No. 163.)  Santoyo alleges that Plaintiff's dental treatment
priority 1C classification on July 27, 2006 was made "by
unidentified staff" based on the triage of Lopez's complaint of

14

pain and discomfort.  (Defs.' Mot. Summ. J. Attach. #1, Mem. P. &
A. 15, ECF No. 131; see also id. Attach. #3, Decl. Paul Santoyo 3.)
Santoyo argues that he classified Plaintiff's dental treatment
priority as "2" when he saw Lopez on November 1, 2006, because his
findings did not support the claim of extreme pain.[6]  (Defs.' Mot.
Summ. J. Attach. #1, Mem. P. & A. 14-15, ECF No. 131.)  Santoyo
thus contends that a prescription of Peridex was appropriate for
Lopez's condition, and no additional prescription was warranted.
(Id. at 15; Decl. Michael Adu-Tutu, D.D.S., Supp. Defs.' Mot. Summ.
J. 5-6, ECF No. 132.)

     As mentioned earlier, Lopez contests this claim and argues
that the priority designation on his Health Care Services Request
Form 7362 submitted on July 26, 2006 appears to be in Santoyo's
handwriting.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 11, ECF No. 163;
see Second Am. Compl. Ex. A, ECF No. 62.)  Lopez also offers a copy
of Chapter 5.3 of the Division of Correctional Health Care Services
Dental Services Manual from April 2006, which provides that the
CDCR dentist "shall review, initial, and date all requests for
dental services daily to establish dental priorities of an emergent
(Emergency) or urgent (Priority 1) nature."  (Pl.'s Opp'n Defs.'
Mot. Summ. J. Ex. C at 34, ECF No. 163.)  There is sufficient
evidence from which a jury can question Dr. Santoyo's assertion
that the priority 1C classification was not made by him.

     In their Reply, both Defendants allege that the policies and
procedures relied on by the Plaintiff had not been implemented at
Calipatria at the time of Plaintiff's dental issues.  (Defs.' Reply

---

[6] Admittedly, Santoyo initially classified Lopez's priority as
"1," and only subsequently changed it to "2."  (Defs.' Mot. Summ.
J. Attach. #3, Decl. Paul Santoyo 3, ECF No. 131.)

09cv00108 W (RBB)

1  Pl.'s Opp'n Mot. Summ. J. 1, ECF No. 166.)  Defendants contend that

2  a "version of these Policies and Procedures was not initially

3  implemented at Calipatria State Prison until the middle of 2007."

4  (Id. at 2.)  Defendants' argument in the Reply is contradicted by

5  their moving papers.  Defendants' Memorandum in support of their

6  Motion references the 2006 policies and procedures not once, but

7  seven times.  (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 15-18,

8  20, 23, ECF No. 131.)  Additionally, Defendants submitted a

9  declaration of Michael Adu-Tutu, D.D.S., a dentist who relied on

10 the 2006 policies and procedures to opine on the appropriateness of

11 Lopez's treatment while at Calipatria.  (See Decl. Michael Adu-

12 Tutu, D.D.S., Supp. Defs.' Mot. Summ. J. 2, 6-9, 11, 14, ECF No.

13 132; id. Ex. C.)

14      Defendants, as the moving parties, bear the initial burden of

15 demonstrating "the absence of a genuine issue of material fact."

16 Celotex Corp., 477 U.S. at 323.  Ironically, in this case,

17 Defendants raised a genuine issue of fact by arguing in the Reply

18 that the 2006 policies and procedures they had relied on previously

19 are inapplicable to this case.[7]  (Defs.' Reply Pl.'s Opp'n Mot.

20 Summ. J. 1, ECF No. 166.)

21      In light of this contradictory evidence presented, the Court

22 cannot conclude that Defendant Santoyo met his burden of proving

23 the absence of disputed material facts.  Celotex Corp., 477 U.S. at

24

25      [7] The Court notes that the Motion and the Reply appear to be
26 authored by the same attorney, Timothy Kral.  Nonetheless, counsel
   failed to explain, or even acknowledge, the inconsistency in his
27 submissions to this Court.  Mr. Kral, who is licensed in the State
   of California, is presumably familiar with his duties to the Court,
28 particularly the duty of candor as set out by the California Rule
   of Professional Conduct 5-200 and California Business and
   Professions Code.

16                                        09cv00108 W (RBB)

1   322-23.   In any event, the parties dispute whether Santoyo refused

2   to prescribe pain medication to Plaintiff.   Plaintiff Lopez has

3   raised a genuine issue for trial regarding the denial of pain

4   medication to defeat Defendants' Motion for Summary Judgment as to

5   his deliberate indifference claim against Defendant Santoyo.

6           **2.   Delaying Treatment and Declining to Perform Surgery**

7                   **a.  More than sixty days**

8           Plaintiff has alleged that Defendant Santoyo was deliberately

9   indifferent to his serious medical needs by failing to ensure that

10  Plaintiff's surgery would occur within the sixty days mandated by

11  his priority 1C status and by declining to perform Lopez's surgery

12  himself.  (Second Am. Compl. 6-7, 9, ECF No. 62.)

13          Defendant argues that this claim fails, because Santoyo knew

14  nothing about Plaintiff's condition until November 1, 2006, when he

15  examined Lopez and classified him as priority 2.  (Defs.' Mot.

16  Summ. J. Attach. #1, Mem. P. & A. 17, ECF No. 131; Reply at 6, ECF

17  No. 166.)

18          Plaintiff contends that Defendant Santoyo had to know about

19  Lopez's condition because the priority designation on the health

20  care request was made by Santoyo, as required by the Division of

21  Correctional Health Care Services Dental Services Manual.  (Pl.'s

22  Opp'n Defs.' Mot. Summ. J. 11, ECF No. 163.)  Lopez again cites the

23  2006 policies and procedures, which provide that the CDCR dentist

24  "shall review, initial, and date all requests for dental services

25  daily to establish dental priorities of an emergent (Emergency) or

26  urgent (Priority 1) nature."  (Id. Ex. C at 34.)  As discussed

27  earlier, the applicability of the 2006 policies and procedures to

28  this case and whether Dr. Santoyo assigned Lopez's health care

17

1   request priority 1C status are disputed issues of material fact.

2   Thus, the Court cannot conclude that Defendant met his burden on

3   summary judgment with regard to this claim.

4                    **b.   Surgery at Calipatria**

5        Lopez also claims that Defendant refused to operate on him at

6   Calipatria, even though Santoyo routinely performed that procedure

7   on other inmates. (Second Am. Compl. 9, ECF No. 62.) Defendant

8   moves for summary judgment on this claim, arguing that there is no

9   evidence of Santoyo's deliberate indifference by failing to perform

10  Plaintiff's surgery at Calipatria. (Defs.' Mot. Summ. J. Attach.

11  #1, Mem. P. & A. 15–16, ECF No. 131.) Defendant Santoyo claims

12  that he could not perform the extraction because he was not

13  qualified as an oral surgeon. (Id. Attach. #3, Decl. Paul Santoyo

14  5.)

15       Santoyo admitted in his responses to Plaintiff's

16  interrogatories that he "treated numerous patients with wisdom

17  teeth issues" and had "extracted wisdom teeth" even though he was

18  not an oral surgeon. (Decl. Michael Adu-Tutu, D.D.S., Supp. Defs.'

19  Mot. Summ. J. Ex. K, ECF No. 132.) Santoyo argues that Lopez's

20  wisdom teeth were impacted, the extraction was beyond the practice

21  of a general dentist, and Santoyo had to refer Plaintiff to an oral

22  surgeon. (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 16, ECF

23  No. 131.) Santoyo also points out that Lopez required sedation for

24  the surgery due to the complications associated with Lopez's

25  impacted wisdom teeth and that the dental clinic at Calipatria was

26  not equipped with that type of anesthesia. (Id.) Santoyo contends

27  that Dr. Torchia used intravenous anesthesia (sedation) for the

28

procedure he performed on Lopez.  (Id.; Decl. Michael Adu-Tutu, D.D.S., Supp. Defs.' Mot. Summ. J. Ex. D at 155, ECF No. 132.)

In opposition, Plaintiff repeats his allegations that Santoyo had referred another inmate to an outside provider for wisdom teeth surgery, but after the inmate complained of pain, Defendant performed the extraction.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 5, ECF No. 163.)  Thus, Lopez contends that it was within Santoyo's ability to help Plaintiff with his dental pain by performing the surgery at Calipatria.

A difference of opinion between a physician and the prisoner concerning what medical care is appropriate does not amount to deliberate indifference.  Sanchez, 891 F.2d at 242.  To prove deliberate indifference, Lopez "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson, 90 F.3d at 332 (internal citations omitted). Here, the parties' opinions regarding Dr. Santoyo's expertise clearly differ.  Notably, Plaintiff does not dispute that he required and received sedation for his surgery.  Neither did Lopez offer any additional evidence to support his contention that Santoyo's refusal to operate on him at Calipatria was medically unacceptable under all of the circumstances.  Thus, Plaintiff's claim that Defendant Santoyo was deliberately indifferent based on Santoyo's referral to an outside surgeon is insufficient to create a basis for relief, and Defendant is entitled to summary judgment on this claim.

///

### c.  Delayed repair following surgery

Finally, Lopez alleged that Santoyo was deliberately indifferent to Plaintiff's serious medical needs by failing to repair Plaintiff's chipped molar within a reasonable time following the wisdom tooth surgery, prolonging Lopez's pain and eating difficulties for more than two months. (Second Am. Compl. 8-9, ECF No. 62.)  Plaintiff's molar was chipped during his wisdom teeth removal on April 30, 2007. (Defs.' Mot. Summ. J. Attach. #2, Decl. Timothy J. Kral, Ex. N, Dep. Adam Ray Lopez, at 86, 96, ECF No. 131.)  Santoyo examined Plaintiff on May 15, 2007, but did not repair the tooth until July 10, 2007. (Id. at 98-99, 105; Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 19, ECF No. 131.)  Defendant offers evidence that Lopez had mild swelling after the surgery when he was seen by Defendant Robertson on May 3, 2007. (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 19, ECF No. 131; Decl. Michael Adu-Tutu, D.D.S., Supp. Defs.' Mot. Summ. J. Ex. D at 243, ECF No. 132.)  Defendant contends that a repair could have damaged the remaining tooth, and it was therefore prudent for Santoyo to wait until the area healed. (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 19-20, ECF No. 131.)

Dr. Robertson's notes from his May 3, 2007 examination of Plaintiff indicate minor swelling and state that tissues appear within normal limits. (Pl.'s Opp'n Defs.' Mot. Summ. J. Ex. F at 63, ECF No. 163.)  When Santoyo subsequently saw Lopez on May 15, 2007, he recorded "delayed healing" but no swelling of the area. (Id.)  Plaintiff alleged he informed Santoyo of his pain caused by his chipped tooth and his inability to eat. (Second Am. Compl. 9, ECF No. 62.)  Plaintiff argues that Santoyo told him he could have

repaired the tooth immediately if he had the time to do so. (Pl.'s Opp'n Defs.' Mot. Summ. J. 10, ECF No. 163.) Plaintiff claims Santoyo promised to call Lopez back in a week to perform the repair, but failed to do so. (Id.) Viewing the facts in the light most favorable to Plaintiff, the Court concludes that a triable issue of fact remains whether the two-month delay in treatment of Lopez's chipped molar constituted deliberate indifference by Santoyo.

### C.  Defendant Robertson

Plaintiff alleged that Defendant Robertson was deliberately indifferent to his serious medical needs by refusing to prescribe pain medication, failing to instruct Santoyo to prescribe pain medication, refusing to conduct Lopez's surgery, failing to instruct Santoyo to conduct the surgery, and failing to ensure that Plaintiff's surgery was expedited. (Second Am. Compl. 10, ECF No. 62.) Defendant Robertson moves for summary judgment, arguing that there is no evidence of his deliberate indifference. (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 20-22, ECF No. 131.)

Robertson argues that he was not aware of Plaintiff's pain complaints until April 23, 2007, one week before Plaintiff had his surgery. (Id. at 20; id. Attach. #4, Robertson Decl. 2-3.) Defendant points out that Lopez's condition at that time was assigned priority 2, which required treatment within 120 days according to Chapter 5.4 of the California Department of Corrections Dental Services Manual from April 2006. (Id. Attach. #1, Mem. P. & A. 23.) Defendants' expert opines that because Plaintiff's dental condition was not classified as "urgent 1A" or "emergent," Dr. Robertson was not required to expedite the surgery

21

even though Lopez had waited more than 120 days by the time Robertson allegedly learned about Plaintiff's condition. (Decl. Michael Adu-Tutu, D.D.S., Supp. Defs.' Mot. Summ. J. 13-14, ECF No. 132.) Robertson contends he first treated Lopez on May 1, 2007, after the oral surgery, when he prescribed Lopez pain medication. (Defs.' Mot. Summ. J. Attach. #4, Robertson Decl. 2.)

A factual dispute remains regarding when Robertson became aware of the Plaintiff's serious medical condition. Lopez alleged that Robertson knew of Lopez's dental condition and the delay in his surgery as early as November 2, 2006, but did nothing to remedy the situation. (Second Am. Compl. 2, 6-7, ECF No. 62.) Plaintiff offers evidence that Robertson, as the chief dental officer at Calipatria, was required to review Lopez's health records, including Santoyo's November 1, 2006 examination notes, prior to approving the outside surgery on November 2, 2006. (Pl.'s Opp'n Defs.' Mot. Summ. J. 6, 14, ECF No. 163; id. Ex. C at 33.) Plaintiff relies on the California Department of Corrections Dental Services Manual from April 2006, arguing that Robertson, in his capacity as chief dentist and a member of the Dental Authorization Review Committee (DARC), was aware of Lopez's pain, swelling, infection, and lack of pain medication. (Pl.'s Opp'n Defs.' Mot. Summ. J. 14, ECF No. 163; id. Ex. C.)

Robertson concedes that the DARC approved the outpatient surgery request for Lopez on November 2, 2006. (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 20, ECF No. 131.) Defendant argues, however, that there is no evidence that Dr. Robertson "participated in the approval process" for Plaintiff's outpatient surgery as a

member of DARC, because the DARC membership may include a "designee" of the chief dentist.  (Id.)

This argument is contradicted by the California Department of Corrections Dental Services Manual from April 2006.  Chapter 4.5 of the manual requires all special dental service requests to be submitted to, and pre-authorized by, the chief dentist before being reviewed by the DARC.  (Pl.'s Opp'n Defs.' Mot. Summ. J. Ex. C at 33, ECF No. 163.)  Defendant Robertson admitted that he served as the chief dentist at Calipatria during the relevant time period. (Defs.' Mot. Summ. J. Attach. #4, Robertson Decl. 1, ECF No. 131.) Thus, Chief Dentist Robertson would have received and preauthorized the request for Lopez's outside surgery in November 2006, regardless of his membership in the DARC.

Notably, Robertson does not disclaim his membership in the DARC.  In his declaration in support of the Motion for Summary Judgment, he states that his "administrative responsibilities as chief dentist" included "submitting referrals for specialty services to the Dental Authorization Review committee, and tabulating and reporting statistical data regarding dental care provided to patients."  (Id. at 2.)

According to Chapter 4.5 of the Dental Services Manual, the purpose of the DARC is to approve requests for otherwise excluded dental services, determine the appropriateness of treatment provided by the institution's dentists, and review treatment recommendations for special dental care needs.  (Pl.'s Opp'n Defs.' Mot. Summ. J. Ex. C at 31, ECF No. 163.)  The DARC is required to meet on a monthly basis, and the permanent membership of the DARC includes the chief dentist or a designee.  (Id.)  Among its

23

09cv00108 W (RBB)

functions is to "[e]nsure that all inmates/patients are receiving equal and timely access to dental care." (Id. at 32.)  A 1C priority classification requires treatment within sixty days, while a 2 priority status mandates treatment within 120 days.  (Id. at 37.)  In this case, Lopez waited 278 days from his initial request on July 26, 2006, or 179 days from the date his outside surgery was approved on November 2, 2006, to receive treatment on April 30, 2007.

Plaintiff points out that Robertson, as chief dentist, was required to maintain written minutes of all DARC meetings.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 14, ECF No. 163; id. Ex. C at 31.) Chapter 4.5 of the Dental Services Manual from April 2006 requires that the DARC written minutes include "specific recommendations for action," and that all recommendations be reviewed "as part of old business at subsequent meetings" and monitored until resolved. (Id. Ex. C at 31.)  Thus, Lopez maintains that Robertson was aware of the delay in surgery from November 2, 2006 through April 30, 2007.  (Pl.'s Opp'n Defs.' Mot. Summ. J. 14, ECF No. 163.)

Defendant replies that the 2006 dental policies and procedures cited by Lopez are inapplicable because they were not implemented at Calipatria until mid-2007.  (Defs.' Reply Pl.'s Opp'n Mot. Summ. J. 8, ECF No. 166.)  As discussed earlier, there is a triable issue of fact with regard to the applicable rules and procedures at Calipatria at the relevant time period.  Therefore, a dispute remains as to whether Robertson was aware of Plaintiff's condition on November 2, 2006.  Accordingly, to the extent Lopez alleged deliberate indifference based on Robertson's failure to prescribe pain medication, order Santoyo to prescribe it, or ensure

1   Plaintiff's surgery was timely performed according to the priority

2   classification, the Motion for Summary Judgment must be denied.

3        To the extent Plaintiff based his deliberate indifference

4   claim on Robertson's refusal to conduct Lopez's surgery himself or

5   failure to instruct Santoyo to conduct the surgery at Calipatria,

6   both Defendants submitted declarations that they could not have

7   safely performed the procedure.  (Defs.' Mot. Summ. J. Attach. #3,

8   Decl. Paul Santoyo 5, ECF 131; id. Attach. #4, Decl. Robertson 4.)

9   The Court is reluctant to second-guess the judgment of medical

10  professionals regarding their own qualifications.  As stated

11  earlier, "[a] difference of opinion between a prisoner-patient and

12  prison medical authorities regarding treatment does not give rise

13  to a § 1983 claim."  Franklin v. Or., State Welfare Div., 662 F.2d

14  at 1344 (citing Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir.

15  1970)).  Therefore, as to these subclaims, Robertson's Motion for

16  Summary Judgment should be granted.

17       **D.  Qualified Immunity**

18       Qualified immunity protects government officials who perform

19  discretionary functions from civil liability when their conduct

20  does not violate a "clearly established" constitutional right of

21  which "a reasonable person would have known."  Harlow v.

22  Fitzgerald, 457 U.S. 800, 818 (1982).  Government officials are

23  entitled to qualified immunity if, (1) viewed in the light most

24  favorable to the plaintiff, the facts alleged do not demonstrate a

25  constitutional violation, or (2) the plaintiff's rights were not

26  clearly established at the time of the alleged violation.  Saucier

27  v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by

28  Pearson v. Callahan, 555 U.S. 223 (2009); see Conner v. Heiman, 672

09cv00108 W (RBB)

F.3d 1126, 1132 (9th Cir. 2012).   A court may consider the two prongs of the qualified immunity analysis in any order.   Chism v. Washington State, 661 F.3d 380, 386 (9th Cir. 2011).

In conclusion of their Motion, Defendants briefly argue that even assuming that Plaintiff can show a constitutional violation, they are entitled to qualified immunity because Lopez cannot raise a genuine issue of material fact regarding whether reasonable prison officials under similar circumstances would believe their actions violated clearly established law.  (Defs.' Mot. Summ. J. Attach. #1, Mem. P. & A. 25, ECF No. 25.)

"For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Ammons v. Wash. Dep't of Social & Health Services, 648 F.3d 1020, 1026 (9th Cir. 2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotations omitted).  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," and all disputed facts must be construed in the plaintiff's favor.  Id. at 201; Ford v. Ramirez-Palmer, 301 F.3d 1043, 1045 (9th Cir. 2002).  In addressing whether a reasonable official would consider his conduct unlawful, courts consider two questions:  "(1) Was the law governing the state official's conduct clearly established?  (2) Under that law could a reasonable official have believed his conduct was lawful?" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995)).

Whether plaintiff's constitutional right was clearly established at the time of a government official's violation is an

objective standard in the qualified immunity analysis; defendant's
subjective understanding of the constitutionality of his conduct is
irrelevant.  Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109
(9th Cir. 2011).  To determine whether a constitutional right was
clearly established, it is not necessary that the very action in
question has previously been held unlawful, but in the light of
pre-existing law the unlawfulness of the public official's action
must be apparent.  Cmty House, Inc. v. City of Boise, Idaho, 623
F.3d 945, 967 (9th Cir. 2010).  When an officer's conduct is so
patently violative of the constitutional right that reasonable
officials would know without guidance from the courts that the
action was unconstitutional, closely analogous pre-existing case
law is not required to show that the law is clearly established.
Boyd v. Benton Cnty, 374 F.3d 773, 781 (9th Cir. 2004).

Plaintiff's right to be free from deliberate indifference to a
serious medical need was well-established prior to the time of the
events in this case.  See Estelle, 429 U.S. at 104.  The Ninth
Circuit recognized that "[d]ental care is one of the most important
medical needs of inmates."  Hunt v. Dental Dep't, 865 F.2d 198,
200-01 (9th Cir. 1989) (quoting Ramos v. Lamm, 639 F.2d 559, 576
(10th Cir. 1980)).  Judge Whelan, the district judge assigned this
case, previously held that a reasonable official would know prior
to July 2006 that it is unlawful to show deliberate indifference to
a prisoner's serious dental needs.  (Order (1) Rejecting Report and
Recommendation [Doc. 91], and (2) Denying Defendants' Motion to
Dismiss Plaintiff's Second Amended Complaint 14, ECF No. 97.)

Here, Defendant Santoyo examined Lopez in November and
recommended "urgent" outside surgery based on the pain, swelling,

27

and infection caused by Plaintiff's impacted wisdom teeth.
Defendant Robertson approved this request in his capacity as chief
dentist at Calipatria.  Plaintiff then waited approximately five
months to receive the surgery.  Construing the facts in favor of
the nonmoving party, Plaintiff has raised a triable issue of fact
that Defendants Santoyo and Robertson failed to timely address his
dental problems and the resulting pain.  Because there are disputed
facts related to the Defendants' deliberate indifference to Lopez's
condition and such indifference would violate clearly established
law, Defendants are not entitled to qualified immunity.  See Hunt,
865 F.2d at 201 ("Prison officials are deliberately indifferent to
a prisoner's serious medical needs when they deny, delay, or
intentionally interfere with medical treatment.").

**IV.   CONCLUSION**

For the reasons discussed above, the Court recommends that
Defendant Santoyo's Motion be granted on the claim that he was
deliberately indifferent to Plaintiff's dental needs in failing to
perform Lopez's dental surgery himself.  In all other respects,
Santoyo's Motion should be denied.  Defendant Robertson's Motion
should be granted on the claims that he was deliberately
indifferent to Lopez's dental condition in failing to perform the
dental surgery himself and failing to order Santoyo to perform the
dental surgery.  The remainder of Defendant Robertson's Motion
should be denied.

Plaintiff's [Ex Parte] Application for Order Allowing
Plaintiff to File [a] Reply to Defendants' Most Recent Reply to
Plaintiff's Opposition to Motion for Summary Judgment on Second
Amended Complaint [ECF No. 170] is denied.

09cv00108 W (RBB)

1    This Report and Recommendation will be submitted to the United

2    States District Court judge assigned to this case, pursuant to the

3    provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

4    objections with the Court and serve a copy on all parties on or

5    before **February 8, 2013.**  The document should be captioned

6    "Objections to Report and Recommendation."  Any reply to the

7    objections shall be served and filed on or before **February 22,**

8    **2013.**  The parties are advised that failure to file objections

9    within the specified time may waive the right to appeal the

10   district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

11   1991).

12       **IT IS SO ORDERED.**

13   DATE: January 15, 2013           _____

14                                    Ruben B. Brooks, Magistrate Judge
                                      United States District Court

15   cc:
     Judge Whelan
16   All Parties of Record

17

18

19

20

21

22

23

24

25

26

27

28